PREGERSON, Circuit Judge,
with whom Judges REINHARDT,
WARDLAW, W. FLETCHER, and PAEZ,
join, dissenting from the denial of rehearing en banc:
The State of Arizona continues to ignore this court’s frequent requests to adopt a *1093 clear protocol stating the procedures it follows when executing its citizens. See Towery v. Brewer, 672 F.3d 650 (9th Cir.2012)
As Judge Berzon reminds us in her partial dissent concerning the execution of Samuel Lopez, the simple fact remains that this court, the public, defense counsel, and inmates awaiting execution lack a definite understanding of the procedures and protocols the State of Arizona follows in executing its citizens. Because Arizona: (1) does not make known a detailed, written protocol; (2) limits the ability of counsel or witnesses to observe critical stages of the execution process; and (3) restricts its documentation of executions — prisoners awaiting execution and their defense counsel are prevented from obtaining information that could support a successful constitutional challenge to Arizona’s use of lethal injection to execute death row prisoners.
The March 8, 2012 execution of Robert Towery is perhaps the starkest example of Arizona’s flawed procedures. During that execution, Towery remained strapped to the execution table for more than an hour while execution team members repeatedly poked and prodded him in an effort to set up both a primary and back-up IV line.
According to the Arizona Department of Corrections’ (“ADC”) log notes, at 9:49 a.m., Towery was restrained and secured to the execution table. At 9:52 a.m., the ADC Director specified the locations for the catheter sites. Towery remained strapped to the table for over thirty minutes, while the execution team made “multiple attempts” to insert left and right peripheral catheter IV lines. These attempts were unsuccessful. At 10:28 a.m., after these failed attempts, the IV Team Leader recommended a right femoral catheter as the primary IV line. This procedure required the use of a larger needle, a scalpel, and a “guide wire” to thread the needle into Towery’s central femoral line.
According to the ADC log notes, the implementation of the central femoral line was completed at 10:50 a.m., nearly a full hour after the execution team began its work. At 10:59 a.m., a catheter was placed in Towery’s right hand. Finally, at 11:17 a.m. Towery’s execution began. Towery’s autopsy revealed that both his femoral artery and femoral vein were punctured during the insertion of the IVs.
Because Towery is dead, we do not know how much pain he suffered during the hour that he was strapped to the execution table. What we do know, however, comes from his attorney, Dale Baich. Before his execution, Towery was told by officials from the ADC that if he made any remarks during his “last statement” that were critical of the ADC, his microphone would be cut off. So Towery and his attorney devised a “code” system for Towery to communicate to his attorney if he experienced pain during his execution or was denied access to counsel. Under this code system, if Towery was denied access to his counsel, he would say during his last statement, “Hey Dale I should have called you.” If there were problems with the insertion of the IV lines, or if Towery suffered pain during the insertion of the IV lines, he would utter the word “mistake” as part of his last statement. During Towery’s last words, he said, “In the end, I should have called you Dale.” Towery also said that he had made “mistake, after mistake, after mistake.” (emphasis added).
Another example of cruel and unusual punishment involved the execution of Arizona prisoner Thomas Arnold Kemp on April 25, 2012. Instead of receiving the traditional three drug lethal injection mixture, Kemp was executed using only an injection of pentobarbital. Soon after receiving the lethal injection in his central femoral line, Kemp’s right arm and torso *1094 began shaking “violently.” In the district court, the State of Arizona argued that Kemp’s execution took place “without incident,” but the district court recognized that these words disregarded an eyewitness statement that Kemp convulsed for at least five seconds. Dr. Eric Katz stated in a declaration that this description “suggests a partial seizure which began shortly after medication administration.” An autopsy report revealed that despite Kemp’s good veins that were quite prominent, Kemp had “at least three or more” punctures, including “at least one puncture in the right femoral area and at least two punctures over the left upper extremity.”
Justice and logic compel the conclusion that clearly defined, written protocols are required when the state determines that it will execute one of its inmates. How would the public — prohibited from attending Arizona’s executions — know that an execution was carried out consistent with Constitutional requirements without the disclosure of a written protocol? And how could a reviewing court be confident that Arizona is following constitutional procedures when taking the life of one of its citizens?
This court is not alone in its insistence that states who perform executions maintain a proper and consistent written protocol system. See Taylor v. Crawford, 457 F.3d 902 (8th Cir.2006) (upholding the district court in directing the Missouri Department of Corrections to adopt a revised written protocol for lethal injections in Missouri, in light of the fact that the majority of the protocol was unwritten); Clemons v. Crawford, 585 F.3d 1119, 1122-23 (8th Cir.2009) (summarizing the procedural and factual history of Taylor v. Crawford).
I would grant Samuel Lopez a stay of execution. The State of Arizona must comport with the requirements of due process of law and establish a dear and humane protocol that gives the public, this court, and most importantly, inmates and their defense counsel, notice of its execution procedures.
Arizona has stubbornly refused to define the amorphous and highly discretionary protocol it follows in executing its citizens. Until the state adopts a clearly written and humane execution protocol there exists a substantial risk that the constitutional rights of those it executes will be violated. Accordingly, I dissent.[1]

. Chief Judge Kozinski tells us that there can be no Eighth Amendment violation in this case because any pain that Lopez would suffer "pales in comparison” to the pain he inflicted upon the woman he murdered. Concurrence at 2.1 agree with Chief Judge Kozinski that Lopez's crime was senseless, brutal, horrible, and tragic. But I disagree with the proposition that the pain and horror inflicted upon a murder victim is relevant in determining whether the state’s method of execution constitutes "cruel and unusual punishment” in violation of the Eighth Amendment. To accept this proposition would allow the state to turn the place of execution into a torture chamber. The Supreme Court has instructed that the Eighth Amendment requires courts to look to "evolving standards of decency.” Kennedy v. Louisiana, 554 U.S. 407, 420, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008). There is nothing "decent” about what Lopez did to his victim. Such behavior should not be replicated.